UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
No. 5:25-cv-00139

| | |
|---|---|
| SHARON FELICO,<br><br>               Plaintiff,<br><br>  v.<br><br>FIRSTKEY HOMES, LLC,<br><br>               Defendant | COMPLAINT<br>(Jury Trial Demanded) |

COMES NOW the Plaintiff, Sharon Felico, by and through the undersigned counsel, who does allege and say of Defendants FirstKey Homes LLC as follows:

## PARTIES

1. Plaintiff Sharon Felico (hereinafter "Plaintiff") is an individual and resident of Sherrills Ford, Catawba County, North Carolina and was employed by Defendant until the time of her termination as described hereinbelow.

2. Defendant FirstKey Homes, LLC (hereinafter "Defendant") is a company based in the State of Georgia, and incorporated under the laws of Delaware. Defendant employs in excess of 15 employees in North Carolina, including, without limitation, in and around Charlotte, North Carolina.

## JURISDICTION AND VENUE

3. The United States District Court for the Western District of North Carolina has personal jurisdiction over the Defendants by virtue of the Defendants conducting ongoing business within this District, namely, without limitation, at their business location in Charlotte, North Carolina.

4. The United States District Court has subject matter jurisdiction over this action pursuant to 28 USC § 1331, in that claims made in this action arise under the laws of the United States; 28 USC § 1332, in that there is complete diversity amongst the parties in this matter, and in that the Plaintiff's claimed damages are for in excess of $75,000.00; as well as under 28 USC § 1367, in that such claims not arising under the laws of the United States are "so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."

## FACTS ALLEGED

5. The Plaintiff was employed by the Defendants as a Service Manager beginning September 6, 2022, working remotely from home but based in the Defendant's regional office in Charlotte, North Carolina.

6. Plaintiff's job responsibilities included providing for service requests and authorizing work orders – or seeking authorization for larger work orders – for more than 7,000 homes in five (5) sub-markets for the Charlotte region, and shepherding millions of dollars of the corporate budget for such expenses.

7. Since during or before September 2022, Plaintiff is an individual suffering from the effects of post-traumatic stress disorder ("PTSD") and Unspecified Anxiety Disorder ("UAD"), which conditions impact her cognition, emotional state, and ability to work without accommodations on a daily basis, and as such was and is a person with a disability as defined by the Americans with Disabilities Act of 1990, as amended.

8. At the time of her hiring, my employer was aware of these conditions, and was aware that Plaintiff's doctor had advised her to work from home due to those disability conditions, as it lessens the likelihood and frequency of complications arising from those conditions.

9. Plaintiff's conditions relate in large part to a personal, traumatic and violent event that she experienced prior to her employment with FirstKey.

10. At the time of her hiring, Defendant informed Plaintiff that Plaintiff would be working in a remote position for FirstKey.

11. At all times during her employment, Defendant exercised complete control over Plaintiff's daily activities, including instituting policies to be followed by Defendants' employees, requiring the termination or discipline of Defendants' employees, and generally directing Defendants' employees in the daily operations at the facility.

12. Plaintiff generally performed her work in a manner acceptable to the Defendant, and within the realm of what could have been reasonably expected of a worker in the position of Service Manager for the Defendant in the Charlotte region.

13. In or about January 2024, the Defendant issued a mandate that all employees would be required to return to work in-person five (5) days a week from the Defendant's office location.

14. A general return to in-person work was against the Plaintiff's doctor's medical advice, and as such the Plaintiff initiated the process of seeking reasonable accommodation from the Defendant to allow her to continue to work remotely.

15. Plaintiff's district Operations Director, her supervisor, informed her that he supported her request to work remotely.

16. Plaintiff obtained a doctor's note supporting her reasonable accommodation request on January 29, 2024, and timely submitted it to her employer on February 8, 2024, once she had gathered the relevant information needed to make the formal request with the Defendant.

17. Plaintiff's request for a reasonable accommodation was that she be permitted to continue to work remotely as much as possible, with limited in-office presence, as she had done for the immediate prior year and a half.

18. After some discussion, Defendant granted Plaintiff's reasonable accommodation request in part on or about March 4, 2024, only allowing her to work remotely two (2) days per week but otherwise insisting on Plaintiff's return to the office.

19. This reasonable accommodation offered the bare minimum that Plaintiff's doctor stated was appropriate for her circumstance, but did not follow the doctor's recommendations that she be given three (3) days of remote work per week.

20. Plaintiff had been working 100% remote for the entirety of her employment, and the Defendant's insistence on the maximum possible amount of in-office time shows a clear and distinct animus against the Plaintiff related to her mental health conditions and disabilities.

21. Subsequently, Defendant's employees, including Plaintiff's supervisor, began acting passively-aggressively towards her, which Plaintiff noted was a marked

distinction from how she had been treated prior to her request for a reasonable accommodation.

22. Plaintiff's supervisor made comments towards her that indicated he believed she was "making up" her disability.

23. Plaintiff was excluded from meetings and workplace activities with her coworkers and peers by the Defendant, and was put in the position of doing undesirable tasks, such as notifying other employees of their termination, which Plaintiff had not experienced prior to making her request for a reasonable accommodation.

24. During this time, Defendant initiated an audit targeting the Plaintiff, which audit was initiated because of Plaintiff's requests for reasonable accommodation, and which audit would not have been initiated without such requests having been made.

25. On or about March 6, 2024, Plaintiff was informed she was being suspended from her position for a policy violation that resulted from the internal audit that began after her reasonable accommodation request.

26. On April 3, 2024, Plaintiff was terminated, purportedly because of the alleged policy violation.

27. Non-disabled employees with FirstKey who committed what were, at worst, mistakes in the categorization of expenses for work orders, have not been and would not have been similarly terminated.

28. In reality, Plaintiff's termination was based solely on discrimination against Plaintiff due to her disability, and in retaliation based on Plaintiff's request for a

reasonable accommodation, and her continued insistence on her need to work remotely.

29. Plaintiff timely filed a Charge of Discrimination against Defendant with the Equal Employment Opportunity Commission ("EEOC"), alleging discrimination and retaliation based on disability.

30. The first such charge was filed on August 27, 2024. Defendant received notice of the Charge shortly thereafter.

31. The EEOC issued Plaintiff a 90-Day Right to Sue Letter to the Plaintiff in regard to Plaintiff's claims, and the Plaintiff is hereby timely filing a complaint against the Defendants pursuant to those letters.

### FIRST CAUSE OF ACTION
**(Failure to Provide Reasonable Accommodation for Disability and Discrimination on the Basis of Disability in Violation of 42 U.S.C. Chapter 126, Subchapter 1, § 12112 and 42 U.S.C. § 2000e-2, 2000e-3, *et seq.*)**

32. Plaintiff hereby incorporates by reference paragraphs 1 through 31 as if fully stated herein.

33. Defendants employed Plaintiff in an at-will capacity until Plaintiff's termination on or about April 3, 2024.

34. Plaintiff was terminated due to Plaintiff's disability, and in retaliation against Plaintiff for her requests for accommodation due to her disabilities, and opposition to Defendant's discriminatory practices in failing to accommodate her disability needs, and not due to any pretextual reason provided by Defendants.

35. Further, in terminating Plaintiff after only partially granting Plaintiff's request for reasonable accommodations, Defendant failed to meaningfully engage in

the interactive process required by the ADA, and refused to grant her the reasonable accommodations to which she was entitled, including, but not limited to, being permitted to work remotely three (3) days per workweek.

36. Defendants' refusal to reasonably accommodate and termination of Plaintiff was and is in violation of the Americans with Disability Act of 1990, as amended.

37. Plaintiff was and is damaged by Defendants' actions in an amount greater than $75,000.00, to be proven with more specificity at trial. This amount includes lost wages and compensatory damages related to the Defendants' wrongful discharge of Plaintiff, as well as damages for emotional distress.

38. The Defendants' actions as alleged in this Complaint were willful and wanton, were in reckless disregard of the Plaintiff's rights, and the Plaintiff is entitled to recover punitive damages against the Defendants.

## SECOND CAUSE OF ACTION
### (Retaliation in Violation of 42 U.S.C. Chapter 126, Subchapter 1, § 12203 and 42 U.S.C. § 2000e-2, 2000e-3, *et seq.*)

39. Plaintiff hereby incorporates by reference paragraphs 1 through 38 as if fully stated herein.

40. When Defendant received notice of the Plaintiff's request for reasonable accommodation, the Defendant began intentionally targeting Plaintiff for micromanagement, increased scrutiny, exclusion from communication and interaction with her peers, and by placing duties on her shoulders that were not part of her typical work duties.

41. Further, Defendant suspended the Plaintiff mere days after partially granting her request for a reasonable accommodation, and terminated Plaintiff shortly thereafter, for purported acts that would not have lead to the suspension and termination of a non-disabled employee.

42. This action was done clearly in retaliation to the Plaintiff having exercised her lawful right to request a reasonable accommodation from the Defendant, and had no other justification under the unemployment laws or regulations of the United States or the State of North Carolina.

43. Plaintiff was and is damaged by Defendants' actions in an amount greater than $75,000.00, to be proven with more specificity at trial.

44. The Defendants' actions as alleged in this Complaint were willful and wanton, were in reckless disregard of the Plaintiff's rights, and the Plaintiff is entitled to recover punitive damages against the Defendants.

### THIRD CAUSE OF ACTION
### (Wrongful Discharge in Violation of Public Policy)

45. Plaintiff hereby incorporates by reference paragraphs 1 through 44 as if fully stated herein.

46. The Defendants' termination of the Plaintiff was done in violation of the public policy of the State of North Carolina as embodied in N.C. Gen. Stat. § 143-422.1, *et seq.*, the North Carolina Equal Employment Practices Act.

47. The Plaintiff was terminated due to discrimination against her for her disability.

48. The Plaintiff has suffered damages in excess of $75,000.00, in an amount to be proven at the trial of this matter.

## PRAYER OF RELIEF

NOW WHEREFORE the Plaintiff does pray the Court as follows:

1. That the Plaintiff have and recover a judgment against Defendant in an amount greater than $75,000.00; to be proven more specifically at the time of trial, which judgment shall include lost wages, lost benefits, emotional distress, and economic and compensatory damages as allowed by law.

2. That an award of punitive damages be assessed against the Defendant.

3. That all issues so triable be tried by jury.

4. That the cost of this action be taxed against the Defendant.

5. That Plaintiff be awarded its reasonable attorneys' fees.

6. For such further and other relief as the Court deems just, fitting, and proper.

This is the 3rd day of September, 2025.

**Pope McMillan, P.A.**
Attorneys for the Plaintiff

By: /s/ Clark D. Tew
Clark D. Tew
N.C. State Bar No. 41632
P.O. Drawer 1776
Statesville, NC 28687
(704) 873-2131
ctew@popemcmillan.com